UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                     )
VICTOR (VANESSA) NAVARRETE,          )
                                     )
            Plaintiff,               )
                                     )
    v.                               )   Civil Action No. 22-3294 (ABJ)
                                     )
AMAZON,                              )
                                     )
            Defendant.               )
_____)
```

## MEMORANDUM OPINION & ORDER

On July 11, 2022, plaintiff filed suit in D.C. Superior Court against defendant Amazon for discrimination on the basis of "race (Hispanic), sex (Male), National Orig[in] (Mexican), [and] Gender Identity" and alleged that defendant "retaliated agains[t] [her] for engaging in protected activity, in violation of [Title] VII of the Civil Rights Act of 1964 as amended." Compl. [Dkt. # 6] at 1. Defendant removed the case to this Court on October 27, 2022, *see* Notice of Removal [Dkt. # 1], and answered the complaint on November 3, 2022. Answer [Dkt. # 8].

On January 3, 2023, plaintiff filed a motion for leave to amend her complaint. *See* Mot. for Leave to File Am. Compl. [Dkt. # 19]. The proposed amended complaint significantly expands plaintiff's allegations, adds 20 John and Jane Doe defendants and a separate corporate defendant – Prime Now, LLC ("Prime Now") – and adds numerous claims under federal and District of Columbia law. *See generally* Proposed Am. Compl. [Dkt. 19-1]. Defendant opposed plaintiff's motion, *see* Def.'s Opp. to Pl.'s Mot. for Leave to File Am. Compl. [Dkt. # 24] at 6 ("Opp."), and the matter is fully briefed. *See* Rebuttal to Opp. [Dkt. # 28] ("Reply").

The parties attempted to resolve this dispute via mediation beginning in February 2023, and the Court appointed *pro bono* counsel for plaintiff for that limited purpose. *See* Order Appointing Counsel [Dkt. # 31]. That effort ultimately failed in January 2024, *see* Status Report [Dkt # 51], and the parties engaged in a brief round of supplemental briefing regarding plaintiff's outstanding motion to amend her complaint. *See* Suppl. Mem. in Supp. of Mot. for Leave to Am. [Dkt. # 54] ("Pl.'s Supp."); Def.'s Surreply Opp. Mot. to Am. [Dkt. # 59] ("Def.'s Surreply").

The Court has considered the parties' submissions, and the motion will be **GRANTED IN PART** and **DENIED IN PART**.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15(a)(2), if an amendment is sought more than 21 days after the pleading was served or a responsive pleading was filed, a party may amend its pleading only with the opponent's consent or with leave of court.

Generally, the Court "should grant leave to amend a complaint 'in the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Atchinson v. District of Columbia*, 73 F.3d 418, 425–26 (D.C. Cir. 1996), quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Where amendment would be futile, however, the Court may in its discretion deny such a motion." *Anderson v. Fed. Bureau of Prisons*, No. 10–0413, 2011 WL 346079, at *1 (D.D.C. Feb. 3, 2011). "An amendment is futile if it would not survive a motion to dismiss or for judgment on the pleadings." *Stith v. Chadbourne & Parke, LLP*, 160 F.Supp.2d 1, 6 (D.D.C. 2001). Therefore, in assessing an argument that an amendment would be futile, the court

must assess the proposed amendments under the same standard as would be applied to a motion to dismiss.

## ANALYSIS

The Court notes at the outset that defendant opposes plaintiff's motion to amend for two reasons other than futility: plaintiff's failure to meet and confer with defendant before filing her motion as required by Local Rule 7(m), *see* Opp. at 1–2, and because defendant believes the amended complaint violates the requirements in Federal Rule of Civil Procedure 8 that a pleading should contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and that each averment "be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

Although the proposed amended complaint is at points duplicative and lengthy, plaintiff is proceeding *pro se* in this case. And, as defendant recognized in its opposition, enforcement of Rule 8's strictures is committed to the sound discretion of the trial court. *See* Opp. at 2. Therefore, in an exercise of its discretion, the Court will focus its attention on the meat of defendant's argument: that plaintiff failed to exhaust her administrative remedies with respect to certain claims and that plaintiff's claims under the D.C. Human Rights Act are time barred.

I.   **Title VII and ADA Claims.**

"Title VII requires that a person complaining of a violation file an administrative charge with the [Equal Employment Opportunity Commission ("EEOC")] and allow the agency time to act on the charge. Only after the EEOC has notified the aggrieved person of its decision to dismiss or its inability to bring a civil action within the requisite time period can that person bring a civil action herself." *See Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). The Americans

with Disabilities Act ("ADA") incorporates these requirements by reference. *See* 42 U.S.C. § 12117(a).

Plaintiff filed a charge of discrimination with the EEOC on April 5, 2021. *See* Charge of Discrimination, Ex. A to Reply [Dkt. # 28] at 15–16. The EEOC complaint alleges a series of work-related incidents, including that:

- Defendant's employees referred to plaintiff as "Victor" rather than her then-preferred name "Vanessa," both verbally and in writing on work-related items;

- Plaintiff was subjected to verbal harassment and slurs from her coworkers;

- Plaintiff's requests that the alleged harassment be addressed were rejected by her supervisor, Scott Hammond;

- Plaintiff was subjected to death threats and physical harassment by her managers and coworkers;

- Plaintiff was instructed that she could no longer contact Human Resources or law enforcement authorities regarding the alleged harassment; and

- Plaintiff was pressured to resign and sign a severance agreement, which was presented to her in English despite her discomfort communicating in and reading English.

*Id.* Plaintiff received her "right-to sue" letter from the EEOC on January 4, 2023, *see* Dismissal and Notice of Rights, Ex. C. to Reply [Dkt. # 28] at 21, and she filed her amended complaint the following day. *See* Proposed Am. Compl.

Defendant argues that three of the claims included in the proposed amended complaint were never exhausted: the claim for retaliatory termination in Count Sixteen; the claim for aiding and abetting Title VII violations in Count Eight; and the ADA claim in Count Seventeen. *See* Opp. at 3-4. Plaintiff maintains that defendant has conceded exhaustion because it previously filed a motion for summary judgment based in part on the alleged failure to exhaust, but later withdrew it when plaintiff received the "right-to-sue" letter. Reply at 4.

When defendant withdrew the summary judgment motion, it told the Court: "Plaintiff has now exhausted her administrative remedies as to the matters encompassed by her EEOC charge. Therefore, Amazon respectfully withdraws its motion for Summary Judgment." *See* Notice of Withdrawal of Mot. and Request for Status Conf. [Dkt. # 18] at 1. So plaintiff is correct that defendant is foreclosed from arguing that any claims encompassed by the EEOC charge were not exhausted. That does not mean, however, that all of the claims contained in the proposed amended complaint have been exhausted. Therefore, the Court will address the three particular claims that defendant objects to now.

### A. Plaintiff's Claim of Retaliatory Termination Under Title VII.

In Count Sixteen of the proposed amended complaint, plaintiff alleges that defendant terminated her in retaliation for lodging complaints of discrimination. *See* Proposed Am. Compl. ¶¶ 273–87. Defendant argues that plaintiff failed to exhaust her retaliation claim because the termination occurred after she filed her EEOC charge, and "[t]ermination is a discrete adverse action that individually triggers Title VII's procedural requirements." Opp. at 4, citing *Hunter v. District of Columbia*, 797 F. Supp. 2d 86, 94-95 (D.D.C. 2011), *aff'd*, *Hunter v. District of Columbia Government*, 2013 WL 5610262 (D.C. Cir. Sep. 27, 2013). Defendant therefore maintains that the termination had to be separately exhausted with either the filing of a new charge with the EEOC or an amendment to the initial one. *See id.* at 4-5.

The question of whether a plaintiff may bring unexhausted claims of retaliation that relate to earlier-filed, administratively exhausted claims is unsettled in this Circuit. *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (declining to clarify this issue). In 1995, the D.C. Circuit held that "[a] Title VII lawsuit following [an] EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such

allegations,'" *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995), quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994), and that would "arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Id.*, quoting *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981). After *Park*, in 2002, the Supreme Court examined the statutory time limits for the initial administrative filing of a Title VII charge and held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Some courts in this district have concluded that *Morgan* overruled the *Park* "like or reasonably related" rule, and that every discrete claim of retaliation must be administratively exhausted. *See, e.g.*, *Romero-Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 149 (D.D.C. 2005). Other courts, however, have found that *Morgan* did not overrule *Park*, and that a plaintiff may still bring unexhausted claims of retaliation when the claims are "of a like kind to the retaliatory acts alleged in the EEOC charge, which were specified to be of an ongoing and continuing nature." *Smith-Thompson v. District of Columbia*, 657 F. Supp. 2d 123, 137 (D.D.C. 2009), quoting *Wedow v. Kansas City*, 442 F.3d 661, 673 (8th Cir. 2006). The D.C. Circuit has not yet clarified which standard applies. *See Payne*, 619 F.3d at 65 (declining to reach the question of whether *Morgan* overruled the "of a like kind" rule, where the respondent's claims were unsustainable under either standard); *see also Mount v. Johnson*, 36 F. Supp. 3d 74, 83–90 (D.D.C. 2014) (discussing the differing interpretations of *Morgan* and collecting cases).

Whether the *Morgan* test applies, though, may depend on whether the unexhausted discriminatory events took place before plaintiff contacted the EEOC or after she filed her administrative complaint. As relevant here, plaintiff submitted her EEOC Complaint on April 5,

6

2021, she was terminated on October 6, 2021, and she received her "right-to-sue" letter on January 4, 2023.  *See* Notice of Withdrawal of Mot. [Dkt. # 18] at 1.  The district court in *Mount* reasoned that "*Morgan* dealt specifically with a factual scenario involving allegations of discrete discriminatory acts that had occurred *before* the plaintiff filed an administrative complaint, and the Supreme Court did not address exhaustion in the context of discriminatory or retaliatory incidents that occurred *after* an administrative complaint is filed." 36 F. Supp. 3d at 84 (emphasis in original).  Because plaintiff's alleged retaliatory termination occurred after she filed her EEOC complaint, the Court finds it appropriate to analyze this claim under the *Park* standard.

For a charge to be regarded as "reasonably related" to a filed charge, it must "[a]t a minimum . . . arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination."  *Park*, 71 F.3d at 907.  "This connection is necessary to give the agency 'an opportunity to resolve [the] claim administratively before [the employee] file[s] her complaint in district court.'"  *Payne*, 619 F.3d at 65, quoting *Wiley v. Glassman*, 511 F.3d 151, 160 (D.C. Cir. 2007).  In other words, the "analysis centers on whether the allegations that were specifically put before the agency and the new allegations the plaintiff seeks to litigate constitute the same cause of action and are factually similar such that they would be discovered during the agency's investigation."  *Mount*, 36 F.Supp.3d at 85–86.

Here, plaintiff informed the EEOC that she was lodging a claim for retaliation by checking the relevant "retaliation" box in her charge, and she alleged mistreatment of an ongoing and continuous nature from September 20, 2020 to March 31, 2021.  Charge of Discrimination, Ex. A to Reply at 15–16.  Moreover, in the body of her charge, she explicitly informed the EEOC that her superiors were actively pressuring her to resign her position and sign a severance agreement.  *Id.*  This puts plaintiff's proposed retaliatory termination claim squarely in the *Park*

7

category of claims "growing out of" the allegations in the EEOC complaint. The facts alleged support a finding that plaintiff's later termination was related to and a natural outgrowth of her refusal to bow to pressure to resign, and that the termination would have come within the scope of any investigation that reasonably could have been expected to result from the administrative complaint given the short time between the filing of the complaint and plaintiff's termination. Indeed, in the proposed amended complaint plaintiff specifically alleges that defendant "retaliated against [her] for refusing to resign from her job[,] which resulted in [her] unlawful termination on or about October 6, 2021." Proposed Am. Compl. ¶ 149. The Court therefore finds that plaintiff's termination with the EEOC investigation was underway is related to and part of the continuing retaliatory activity that was alleged in her initial EEOC charge, and plaintiff will be permitted to add her retaliatory termination claim in Count Sixteen, even though she did not formally amend the charge or file a new one. *See Hazel v. Washington Metro. Area Transit Auth.*, No. 02-1375, 2006 WL 3623693, at *8 (D.D.C. Dec. 4, 2006) (holding EEOC charges alleging ongoing retaliation and describing a history of sexual and racial harassment and discrimination, including retaliatory non-selection and termination attempts, were reasonably related to unexhausted allegations of subsequent retaliatory non-selections and termination).

**B.     Plaintiff's New Aiding-and-Abetting Claim Under Title VII.**

In Count Eight of the proposed amended complaint, plaintiff alleges that Amazon managers and employees "knowingly and maliciously aided and abetted" defendant's "unlawful employment practices, discrimination, harassment" and other tortious conduct. Proposed Am. Compl. ¶ 197. Plaintiff also avers that the employees' "unlawful discriminatory actions" entitle her to "an award of punitive damages from" not from those individuals, but defendant Amazon. Proposed Am. Compl. ¶ 201.

8

To the extent plaintiff seeks to hold the individuals named in Count Eight liable under the theory that they aided and abetted defendant's allegedly unlawful conduct, that claim is futile. "Title VII does not impose liability on individuals in their personal capacities." *Coulibaly v. Kerry*, 213 F.Supp.3d 93, 135 (D.D.C. 2016), citing *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995). "[W]hile a supervisory employee may be joined as a party defendant in a Title VII action, that employee must be viewed as being sued in his capacity as the agent of the employer, who is alone liable for a violation of Title VII." *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995). As a result, plaintiff's request to amend her complaint to add an aiding-and-abetting claim in Count Eight will be denied. However, nothing prevents plaintiff from introducing evidence of actions or omissions by individual employees that were alleged in the EEOC complaint in support of the discrimination, retaliation, and hostile work environment claims that are moving forward against the defendant.

### C.   Plaintiff's ADA Claim.

In Count Seventeen of the proposed amended complaint, plaintiff alleges that she suffers from gender dysphoria, that defendant was aware of this fact, and that defendant failed to provide a reasonable accommodation by refusing to print her preferred name (Vanessa) instead of her birth name (Victor) on her employee badge. Proposed Am. Compl. ¶¶ 290–99. She also alleges that defendant "was aware and acknowledged that [she] suffered from gender dysphoria and identified as female, by listing [her] preferred name . . . in [its] human resources database." Proposed Am. Compl. ¶ 297.

Many of these troubling allegations are advanced in connection with plaintiff's Title VII claims of discrimination on the basis of sex, gender identity, race, and national origin, and those are assumed to be true at this stage of litigation. The narrow question at this time, though, is

whether plaintiff took the preliminary steps needed before one can bring a claim under the ADA in federal court. The proposed amended complaint does not allege that plaintiff informed her supervisors that she suffered from the disability of gender dysphoria, as opposed to the fact that she identified as a transgender female, or that she requested any reasonable accommodations necessitated by a diagnosis of gender dysphoria. And most importantly, the record does not reflect that plaintiff first presented her claim to the EEOC as required by statute.

Plaintiff's EEOC charge is silent with respect to any diagnosis of gender dysphoria, and while she mentions defendant's failure to update her name on the "punch-in/punch-out clock" in the body of the charge, she did not check the box indicating that she was bringing a claim of discrimination on the basis of a disability. Charge of Discrimination, Ex. A to Reply at 15–16. Indeed, there is no allegation in the administrative complaint that plaintiff suffers from a disability, or that her alleged disability – as opposed to her gender or race – played into the alleged mistreatment at all. Because of this, the Court cannot find that plaintiff properly exhausted her administrative remedies prior to initiating suit with respect to her ADA claim, and plaintiff's request to amend her complaint to add Count Seventeen will be denied.

## II. D.C. Human Rights Act Claims.

Plaintiff proposes to add four claims under the D.C. Human Rights Act, D.C. Code § 2-1401 *et seq.* ("DCHRA"):

- Count Two alleges that defendant Amazon "discriminated against Plaintiff on the basis of her race (Hispanic), national origin (Mexican), sex, perceived sex, personal appearance, sexual orientation, gender, gender identity, gender expression, gender dysphoria, transgender status, [and] disability" by "subjecting Plaintiff to discrimination, harassment, threats to do bodily injury, lewd, indecent, and/or obscene acts, indecent exposure, offensive language, offensive and unwanted physical contact, retaliation and unlawful termination" in violation of the DCHRA, Proposed Am. Compl. ¶ 161;

- Count Three alleges that Amazon violated the DCHRA based on the same conduct, but it is styled as a claim for "discrimination and harassment" rather than solely "discrimination" in violation of the DCHRA, *see* Proposed Am. Compl. ¶ 167;

- Count Four alleges that various Amazon managers and employees "knowingly and maliciously aided and abetted" Amazon's "unlawful employment practices, discrimination, harassment, threats to do bodily injury, lewd, indecent, and/or obscene acts, indecent exposure, offensive language, offensive and unwanted physical contact, retaliation and unlawful termination" in violation of the DCHRA, Proposed Am. Compl. ¶ 173; and

- Count Seven alleges that various Amazon managers and employees "knowingly and maliciously aided and abetted" the same conduct in Count Four, but it adds that they did so "on account of Plaintiff's membership in a protected class" in violation of the DCHRA, Proposed Am. Compl. ¶ 192.

Defendant argues that plaintiff's proposed claims should be denied because plaintiff raised them after the expiration of the DCHRA's one-year statute of limitations. *See* Opp. at 6, citing D.C. Code § 2-1403.16. Plaintiff was terminated by defendant on October 6, 2021, Proposed Am. Compl. ¶ 91, and she filed a civil action alleging Title VII violations in D.C. Superior Court on July 7, 2022. Compl. [Dkt. # 6] at 1. However, she did not include a DCHRA claim in that complaint; those first appeared in the proposed amended complaint filed in this Court on January 5, 2023, Proposed Am. Compl. ¶¶ 1, 160-76, 191-95, which was 15 months after plaintiff was fired, and more than one year after the last conceivable discriminatory event.

Plaintiff responds by asserting that the DCHRA claims contained in the proposed amended complaint arise out of the same events as the Title VII claims brought in this Court in July 2022: "unlawful discrimination and harassment on the basis of her race (Hispanic), sex (identifies as female), national origin (Mexico), and retaliation while employed by Defendant from September 2020 through October 6, 2021." Pl.'s Supp. at 3. She argues that, therefore, the DCHRA claims "relate back" to the original complaint and should be considered timely. *Id* at 3-4.

"Where an amended complaint is logically related to, and seeks recovery for, the same acts alleged in the initial complaint, . . . this Court permits the later complaint to relate back to the

11

earlier." *Jones v. Ottenberg's Bakers, Inc.*, 999 F. Supp. 2d 185, 189 (D.D.C. 2013); *accord* Fed. R. Civ. P. 15(c)(1)(B) (providing that an amendment "relates back to the date of the original pleading when" "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrences set out . . . in the original pleading"). In determining whether an amendment relates back to a prior claim, "[t]he underlying question is whether the original complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint." *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008), citing *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002).

In this case, in addition to the generalized claims of discrimination and misconduct lodged against defendant, plaintiff's original complaint included four allegations concerning conduct by individuals:

- A December 12, 2020 incident in which an individual named "Malik touched [her] breast and wanted to hug [her]";

- A December 28, 2020 incident in which the Arlington store manager told plaintiff she could not return and attempted to take plaintiff's phone;

- That Renika Smith, the store supervisor for the Whole Foods on P Street, would say "horrible things" about her that displayed "intolerance and discrimination," and told plaintiff that her complaints were an attempt to "make easy money from Amazon because [of things] that the employees, supervisors, and managers of Amazon have done to [her] at work."; and

- That Whole Foods employees, and employees in general, called her "Victor," "dude," "macho man," "Mr.," and "Sr."

Compl. at 1–2 .

In determining whether the new counts relate back, it is important to note that "[t]he legal standard for establishing discrimination under the DCHRA is substantively the same as under Title VII." *Elhusseini v. Compass Grp. USA, Inc.*, 578 F. Supp. 2d 6, 18 (D.D.C. 2008), citing *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1114 (D.C. Cir. 2000). Given the overlapping legal

12

standards, and the fact that the original complaint alleged discrimination in violation of Title VII, defendant was notified of the alleged grounds underlying plaintiff's DCHRA claims on July 11, 2022, when plaintiff filed her original complaint. As indicated above, though, the new DCHRA claims must be supported by *timely* allegations in the original complaint to properly relate back. That means that the two alleged December 2020 events may not support a claim of discrimination under the DCHRA; plaintiff would have had to bring claims based on those events by December 28, 2021 at the latest, but she did not file her first lawsuit until July 2022. However, the latter two undated events could support plaintiff's DCHRA claims in counts Two and Three, depending on when they took place. Since the proposed amended complaint was submitted when plaintiff was proceeding *pro se*, plaintiff may include those allegations to support Counts Two and Three, but only if it is alleged that they took place at a specific time no earlier than July 10, 2021.

As to the DCHRA claims in Counts Four and Seven of the proposed amended complaint, the Court finds that their addition would be futile. Plaintiff styles these as aiding-and-abetting claims against specific "members of management and/or employees" of defendant. *See* Proposed Am. Compl. ¶¶ 172-76, 191-95. But plaintiff's original complaint was brought solely against defendant Amazon; the individuals identified in the proposed amended complaint were neither named in nor served with that original pleading, and plaintiff cannot bring her now-expired DCHRA claims against them today, as there is nothing timely to which the individual claims "relate back." For this reason, plaintiff's request to amend her complaint to add aiding and abetting claims under the DCHRA in Counts Four and Seven will be denied.

### III.   New Tort Claims.

Finally, plaintiff includes in her proposed amended complaint new claims alleging intentional torts perpetrated by individuals employed by defendant and named for the first time in

the amended pleading. These include claims of "bias-related crimes" and/or "designated acts" under the D.C. Bias Related Crime Act, D.C. Code § 22-3701 *et seq.*, brought against Kevin Wallace (Count Nine), Adrian Bell (Count Eleven), and Agnissan Jean Philippe-Adje (Count Thirteen), Proposed Am. Compl. ¶¶ 202–207, 220–226, 235–240; claims of assault and battery and sexual assault against Kevin Wallace (Count Ten), Proposed Am. Compl ¶¶ 208–219; a claim of death threats and assault and battery against Adrian Bell (Count Twelve), Proposed Am. Compl. ¶¶ 227–234; and a claim of lewd, indecent exposure, and assault and battery against Agnissan Jean Phillipe-Adje (Count Fourteen). Proposed Am. Compl. ¶¶ 241–248.

The individuals named in the headings of Counts Nine through Fourteen have not been served with the amended pleading. In addition, it is not abundantly clear that plaintiff even seeks to hold those individuals personally liable; she alleges in each count that she is "entitled to an award of punitive damages from *Defendant Amazon*" based on the employees' conduct, not the named individuals themselves. Proposed Am. Compl. ¶¶ 201, 207, 219, 226, 234, 240, 248 (emphasis added).

If Counts Nine through Fourteen of the proposed amended complaint are intended to be read as claims against defendant Amazon, those claims are futile. "For an employer to be held vicariously liable for the intentional tort of an employee, the tort must occur within the scope of employment and be actuated, at least in part, by a purpose to further the employer's business and not be unexpected in view of the employee's duties." *Floyd-Mayers v. Am. Cab Co.*, 732 F. Supp. 243, 244 (D.D.C. 1990), citing *Weinberg v. Johnson,* 518 A.2d 985, 990 (D.C.1986). Yet plaintiff's proposed pleading is devoid of allegations would support a plausible inference that the employees' conduct was aimed at facilitating anything but their own interests or discriminatory

animus. In the absence of such allegations, plaintiff's request to amend her complaint to add the new tort claims will be denied.

To the extent Counts Nine through Fourteen are intended as claims against the named individuals, the Court has not yet heard or considered any challenges those individuals might raise under Rule 12 or any other grounds. Nevertheless, it is apparent on the face of the proposed amended complaint that at least plaintiff's claims for assault and battery are futile.

In the District of Columbia, civil claims for assault and battery are subject to a one-year statute of limitations. D.C. Code § 12-301(a)(4). Plaintiff amended her pleading to add the assault and battery claims on January 5, 2023. Therefore, based on the one-year statute of limitations, the last act giving rise to plaintiff's claims for assault and battery must have occurred on or after January 5, 2022. Here, all of the conduct alleged in support of plaintiff's assault and battery claims occurred during the period that plaintiff was employed by defendant, *see* Proposed Am. Compl., ¶ 92–95, 128–135, 136–140, and that period ended on October 6, 2021. Proposed Am. Compl. ¶ 147. Plaintiff alleges no contact with Wallace, Bell, or Philippe-Adje following her termination. Thus, the events underlying the claims for assault and battery must have occurred on or before October 6, 2021, which is more than one year prior to the filing of this lawsuit on January 5, 2023. Since those claims are barred by the statute of limitations, plaintiff's request to add them will be denied.

## CONCLUSION

For the foregoing reasons, plaintiff will be allowed to amend her complaint as follows:

- The claims that defendant Amazon did not oppose in its response to plaintiff's motion will be added. These include Count One alleging racial discrimination under Section 1981 and Count Fifteen alleging hostile work environment under Title VII.

- Plaintiff's claims under the DCHRA in Counts Two and Three will be added, but only to the extent they are predicated on the two undated allegations contained in

15

> the original complaint and if the events are alleged to have occurred after July 10, 2021.

- Plaintiff's Title VII discrimination claims in Counts Five and Six will be added to the extent they are based on allegations presented to the EEOC or directly related to those informing plaintiff's April 2021 EEOC complaint.

- Plaintiff's statutory and tort claims under District of Columbia law brought in Counts Nine through Fourteen will be allowed only to the extent that are brought against the individuals named in each count in their personal capacities, except that plaintiff's claims for assault & battery in Counts Ten, Twelve, and Fourteen will be excised given the District's one-year statute of limitations on those torts. Plaintiff is obliged to effect service of a revised amended complaint on the proposed defendants if she intends to bring suit against them.

- Plaintiff's claim alleging retaliatory termination under Title VII in Count Sixteen will be added.

In sum, Counts One and Sixteen will be added in their entirety, and Counts Two, Three, Five, Six, and Nine through Fourteen will be added subject to the limitations described above. None of the other proposed claims may be added to the amended complaint. In addition, considering the appearance of counsel on plaintiff's behalf during the pendency of this motion, plaintiff is **ORDERED** to file a revised amended complaint that comports with this opinion by February 14, 2025.

**SO ORDERED.**

AMY BERMAN JACKSON
United States District Judge

DATE: January 30, 2025