# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **XIMENA NAVARRETE,** | ) | |
| | ) | **Case No. 1:22-cv-03294 (ABJ)** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AMAZON.COM, INC,** | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| **Defendant.** | ) | |
| ———————————————— | ) | |

## <u>AMENDED COMPLAINT</u>

Plaintiff Ximena Navarrete, through counsel, files this Amended Complaint against Amazon.com, Inc. (Defendant) as follows:

## <u>NATURE OF THE CASE</u>

1. In September 2020, Defendant Amazon employed Ximena Navarrete, a transgender Mexican woman, as a Prime Now shopper at Whole Foods locations around the District of Columbia, Maryland, and Virginia.

2. Amazon employees subjected Ms. Navarrete to relentless, appalling, and shocking discrimination and harassment.

3. Employees threated to kill Ms. Navarrete on a near daily basis.

4. Employees sexually harassed her in Whole Foods stores – groping her body, exposing their genitals and masturbating in front of her, and detailed the ways they would sexually assault her.

5. Employees refused to call her by her preferred name, then Vanessa, and chanted "macho man" at her, along with other derogatory names.

6. A supervisor gave her a "pop English test" in front of her colleagues, and then

physically dragged her out of the store when she "failed."

7. Ms. Navarrete reported this disgusting behavior again and again, but no one listened.

8. Ms. Navarrete pled with Amazon for help.

9. Amazon refused.

10. After eleven months, Amazon terminated her employment.

11. Ms. Navarrete brings this action to recover damages for Defendant Amazon's unlawful discrimination and retaliation in violation of the 1866 Civil Rights Act, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(2) *et. seq.*, and the D.C. Human Rights Act, D.C. Code § 2-1401 *et seq*.

## JURISDICTION AND VENUE

12. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Section 1981. The Court has supplemental jurisdiction over Plaintiffs related claims arising under state and/or local law pursuant to 28 U.S.C. § 1367(a).

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## THE PARTIES

14. Plaintiff Ximena Navarrete, formerly known as Vanessa Navarrete and Victor Navarrete, resided in the District of Columbia at the time of the events in this case.

15. Ms. Navarrete is a transgender female and is from Mexico.

16. At all relevant times, Ms. Navarrete met the definition of an "employee" or "eligible employee" under all applicable statutes.

17. Defendant Amazon.com, Inc., is a Delaware registered domestic corporation with operations in Washington, D.C.

18. At all relevant times, Amazon.com, Inc. met the definition of "employer" and/or "covered employer" under all applicable statutes.

19. Prime Now, LLC is a Delaware registered domestic corporation with operations in Washington, D.C.

20. At all relevant times, Prime Now, LLC has been a wholly owned subsidiary of Amazon.com, Inc. and met the definition of "employer" and/or "covered employer" under all applicable statutes.

21. Amazon.com, Inc. and Prime Now, LLC share administrative functions, employee management functions and/or resources.

22. For purposes of this lawsuit, Amazon.com, Inc. and Prime Now, LLC., are hereafter collectively referred to as "Defendant Amazon" or "Amazon."

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

23. On April 5, 2021, Plaintiff Ximena Navarrete filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Title VII).

24. On January 4, 2023, the EEOC issued Ms. Navarrete a Notice of Right to Sue.

## STATEMENT OF FACTS

25. Ximena Navarrete is a transgender woman. She was born in Mexico.

26. On September 20, 2020, Ms. Navarrete began working for Defendant as a Prime Now Shopper.

27. Ms. Navarrete worked at multiple different Whole Foods locations throughout the District of Columbia, Maryland, and Virginia, including in Tenleytown, on P Street, on H Street, in Silver Spring, in Arlington, in Riverdale, in Friendship Heights, and near the Pentagon.

28. A Prime Now shopper is responsible for filling online Whole Foods orders at Whole Foods stores, to include selecting Whole Foods products to complete online orders, messaging customers if products are out of stock and require substitution, and packing groceries for delivery.

29. Prior to starting, Ms. Navarrete listed her preferred name as "Vanessa" Navarrete on her Amazon onboarding paperwork, though her legal name was Victor Navarrete.

30. On her first day of work, Scott Hammond, 3P Area and Tenleytown Manager, directed Ms. Navarrete to wear a name tag that said "Victor," despite her objections.

31. That same day, Kara Richardson, Associate, referred to Ms. Navarrete as a man, and called her "Victor" in front of other customers and employees. Ms. Richardson continued to call Ms. Navarrete "Victor" throughout her time at Tenleytown.

32. Towards the end of her first day of work, Ms. Navarrete reported Ms. Richardson's and other employees' harassing behavior to Mr. Hammond. Mr. Hammond responded that "these are all black people from jail, I don't want any problems. Go to Human Resources."

33. On October 5, 2020, Mr. Hammond arranged for a meeting with Ms. Navarrete, himself, and Marta, last name unknown—who he purported to be a Human Resources representative—and two Whole Foods produce supervisors.

34. At the meeting, Marta told Ms. Navarrete that Amazon cannot change other employees' behaviors. Instead of proposing improvements to the work environment, Marta further

stated that Ms. Navarrete's options were to resign or for Amazon to terminate her employment.

35. When Ms. Navarrete requested paperwork indicating that Defendant would terminate her, Marta instructed her to return to work.

36. Ms. Navarrete later learned that Marta does not work in Human Resources but rather works as a manager for Whole Foods.

37. On October 6, 2020, Amazon assigned Ms. Navarrete to the butcher's section of the store.

38. That same day, Claudia, last name unknown, Butcher Manager, took off her mask to yell at Ms. Navarrete, calling her numerous derogatory names. She screamed that Ms. Navarrete cannot get food from Claudia's area. Multiple customers witnessed Claudia's yelling.

39. Claudia then tried to terminate Ms. Navarrete because she said she did not want to see Ms. Navarrete in her store.

40. Ms. Navarrete went to a manager to report Claudia's conduct. The manager replied that he would not help. Instead, he said that Amazon would terminate Ms. Navarrete's employment.

41. Ms. Navarrete next went to Sidney White, Whole Foods Human Resources representative, but left with no help from Ms. White.

42. Ms. Navarrete again asked Mr. Hammond for help. Mr. Hammond stated that he would fix her ID badge and arrange for an interview with Human Resources.

43. Eduardo, last name unknown, witnessed Claudia yell at Ms. Navarrete. Eduardo reported the conduct to Human Resources, and, upon information and belief, Amazon terminated Eduardo's employment thereafter.

44. Around this time, an Amazon manager told other employees that if anyone reported anything else, Amazon would terminate their employment, just like Eduardo.

45. On October 7, 2020, Claudia again yelled at Ms. Navarrete and screamed that she is fired. Other employees joined in and laughed at Ms. Navarrete.

46. Ms. Navarrete went to Marta to file a Human Resources report. Ms. Navarrete eventually spoke to Ashley, Amazon Human Resources representative, who revealed that Marta does not work in Human Resources.

47. On October 13, 2020, Adrian Bell, Tenleytown employee, waited for Ms. Navarrete in the parking garage. As Ms. Navarrete approached the garage, he began to follow her and started screaming that he wanted to kill her.

48. Specifically, Mr. Bell yelled at her that "people like you are sick," "someone has to kill you, bitch, "suck this black dick," and threatened how he would kill Ms. Navarrete in extreme detail.

49. On October 14, 2020, Ms. Navarrete reported Mr. Bell's harassment to Jay Bachar, Amazon area manager, as well as the District of Columbia Police Department. The police were uninterested in taking a statement from Ms. Navarrete.

50. On October 15, 2020, Ms. Navarrete filed an Employee Report Complaint ("ERC") about Mr. Bell's behavior and requested to not work at the Tenleytown location to avoid working with Mr. Bell.

51. Human Resources directed Ms. Navarrete to take off from work from October 14, 2020 to October 16, 2020 while Amazon investigated her complaint about Mr. Bell.

52. When Ms. Navarrete returned on October 17, 2020, she found out that Amazon never disciplined Mr. Bell.

53. On October 27, 2020, Amazon terminated Ms. Navarrete's employment. Amazon manager, Patty, last name unknown, translated the letter to Ms. Navarrete. She explained that Amazon would be terminating her employment because she did not report to work from October 14 to October 16, 2020.

54. Lizzie Gomes, Senior Human Resources for Amazon, requested to have Ms. Navarrete's employment reinstated.

55. On October 27, 2020, Ms. Navarrete filed an ERC regarding her termination from employment and continued harassment from her colleagues, including them calling her a "fake woman" and talking about her "fake butt and fake breasts."

56. On November 1, 2020, Rhonda, last name unknown, reported to Ryan Hance, Regional 3P Operations for Amazon:

> I have an employee that has been harassed at another location by the men there she is a transgender. They have also waited at her car at the Tenley Town location and has threatened to harm, her she has spoke to the supervisor and he told her to handle it herself his name is Scott. The young man from that location was here today with her and made a hand gesture no I did not see it but she was very scared and tearing up. So I also made the whole foods team aware and Jay as well. The young man name is Adrian Bell that was here today.

57. On November 2, 2020, Mr. Bachar confirmed that he received Ms. Navarrete's complaint about Mr. Bell.

58. Later, on November 2, 2020, Marcel, last name unknown, and Diego, last name unknown, both P Street employees, started laughing and making fun of Ms. Navarrete. Marcel and Diego told Ms. Navarrete that she was a piece of trash and threatened to hit her.

59. These comments from Marcel and Diego became a daily occurrence, so Ms. Navarrete asked the P Street manager for help. The manager, like the other supervisors, failed to take action.

60. On November 2, 2020, Ms. Navarrete asked Alisha Hyde, Prime Now Senior Human Resources Business Partner, and Ms. Gomes for her missing payments from October 13, October 14, October 18 and October 19, 2020—two of those days missed because Amazon directed her to stay home after Mr. Bell's harassment. She also filed an ERC complaint regarding her missed pay.

61. On November 14, 2020, Antonio, Tenleytown employee, followed Ms. Navarrete around the store and told her that he wanted to perform sexual acts on her. He began touching her body as he told her about these acts.

62. A customer service employee observed Antionio's inappropriate behavior and called over the managers.

63. A manager directed Ms. Navarrete to go into a closet for "her own protection." The manager then locked the closet to forbid her from calling the police.

64. Ms. Navarrete called the police and Human Resources anyway as she feared for her physical safety.

65. When the police arrived and questioned Amazon supervisors, they told the police that Ms. Navarrete "was not a woman and was actually a man who had a lot of problems."

66. Officer Tracy Cooks stated that the police were uninterested in pursuing the case because "these kinds of people are always complaining." When Ms. Navarrete went to the police station, Officer Cooks threatened to arrest her.

67. Upon Ms. Navarrete's return to the store, Amazon told Ms. Navarrete that calling the police could lead to her termination.

68. Ms. Navarrete, fearing for her safety, did not return to the Tenleytown store.

69. On November 15, 2020, Mr. Hammond emailed Ms. Navarrete, accusing her of working a shift that she was not scheduled for on November 1, 2020. He acknowledged that Amazon was investigating her report of harassment and discrimination.

70. On November 17, 2020, following a phone call with Ms. Hyde, Ms. Navarrete emailed both Ms. Hyde and Rachel Hayden, Senior Human Resources Investigator, about the November 14, 2020 incident. In the email, Ms. Navarrete named witnesses to the event, including Eduardo, and two other employees, Patricia and Estefany.

71. Ms. Hayden also emailed Ms. Navarrete to acknowledge her complaint regarding Ms. Richardson.

72. Sean Burleson, Human Resources Investigator, contacted Ms. Navarrete and informed her that he lived in Washington, D.C., and would help her report and investigate the harassment at work. He also expressed sympathy for her and her situation.

73. On November 20, 2020, Ms. Navarrete was leaving for the day when a male employee, name unknown, asked her to help him pick up his niece and daughter. Ms. Navarrete expressed hesitation, but he told Ms. Navarrete that he had a wife who also worked at Whole Foods, so she could trust him.

74. While in the car, the male employee told Ms. Navarrete that he was sorry for how the other employees treated her. Ms. Navarrete later learned that his sympathetic comments were to create a false sense of ease around him.

75. When they arrived at the male employee's house with niece and daughter, both between the ages of four and five years old, he insisted Ms. Navarrete come in. When Ms. Navarrete declined, he told the two girls to ask her. The male employee incessantly

repeated that he was a good man, his wife knew she was there, and that he would not hurt her.

76. When Ms. Navarrete went inside the house, the male employee directed the younger girls to go into another room. He asked Ms. Navarrete to come into the kitchen.

77. While in the kitchen, the male employee forced Ms. Navarrete to give him oral sex.

78. The two girls walked in and witnessed what happened. The male employee threatened to hurt Ms. Navarrete and the girls if Ms. Navarrete did not continue.

79. Once he finished, the male employee kicked Ms. Navarrete out of his house and said if she ever told anyone, he would deny it and her life would be in danger.

80. On November 25, 2020 and November 27, 2020, Ms. Navarrete once again filed two ERCs regarding ongoing harassment.

81. On November 30, 2020, Ms. Navarrete arrived at the Friendship Heights location at 3:30 AM. The Whole Foods staff told her not to go into the store for her own safety.

82. One female employee informed Ms. Navarrete that managers put cameras in the men's bathroom and parking lot right where Ms. Navarrete parked her car.

83. Around 11:45 AM, two on-duty security guards approached Ms. Navarrete. One of the security guards exposed himself to Ms. Navarrete while the other guard began to touch himself.

84. The security guards continued to follow her around the store, touching themselves. One of the guards ordered Ms. Navarrete to have sex with them in the bathroom or her car. Ms. Navarrete declined.

85. These comments and inappropriate touching continued during the entirety of Ms. Navarrete's shift.

86. Ms. Navarrete was under the impression that the security guards were trying to set her up to perform sexual acts in the garage, in view of the security camera.

87. Upon information and belief, Amazon Management observed this inappropriate behavior and did not intervene.

88. Instead, District Management told Ms. Navarrete that they "knew what happened in California," suggesting that Ms. Navarrete previously worked as a prostitute.

89. District Management threatened to expose Ms. Navarrete's past California employment to other employees in the store.

90. Ms. Navarrete called Mr. Burleson to report the incident. Mr. Burleson told Ms. Navarrete that he previously misrepresented himself and that he does not live in Washington, DC, so he could not help her. He recommended that she should call the police.

91. After Ms. Navarrete called the police, Peter Atkins, Amazon Manager, told the officers that the cameras do not work during the day. Consequently, the officers did not review the footage.

92. Francisco, last name unknown, a Whole Foods employee, told the officers that Ms. Navarrete is a man. The officer turned to Ms. Navarrete and exclaimed that, "well, if you are a man then I have more important things to do." The officers left without taking a report or ensuring Ms. Navarrete's safety.

93. Ms. Navarrete reported to Ms. Hyde and Tinea Williams, both Human Resources representatives, that she did not want to return to Friendship Heights for fear of harassment. Amazon nevertheless continued to schedule her at the Friendship Heights location. Ms. Navarrete used many hours of paid time off to avoid working at the Friendship Heights store.

94. On December 3, 2020, Ms. Navarrete initiated Equal Employment Opportunity contact.

95. Ms. Navarrete filed an ERC about scheduling on December 4, 2020, and Ms. Navarrete

filed another ERC about the harassment at Silver Springs on December 7, 2020.

96. Mirta, last name unknown, P Street Supervisor, in response to Ms. Navarrete complaining

about sexual harassment, told her that "gay people are here to live out fantasies for people

who want from them sexually, so why not do it?" Mirta told Ms. Navarrete that if she was

uncomfortable, she should resign.

97. On December 12, 2020, while at the P Street location, Malik, last name unknown, an

African American employee, physically groped Ms. Navarrete. In her email to Ms. Hyde,

Ms. Navarrete explained:

> [He] wanted to hug me and caress my stomach and touch my chest, it is not
> the first time he does it, I am tired of this man harassing me, he always
> wanted to be holding or hugging me, many times I told him not to do it and
> he continues to do it, I reported it to my manager Renikia Smith Miller. …
>
> This time I did not call the police out of respect for Amazon and [W]hole
> [F]oods, but they need to help me to stop this type of actions, because it is
> not the first time that I report something as it is.

98. Ms. Hyde confirmed that Amazon would investigate.

99. Ms. Navarrete later learned that Amazon closed the investigation because, allegedly, there

were no witnesses, and the cameras did not record the event.

100.    On December 12, 2020, Mirta further said that if Ms. Navarrete were a real woman,

Amazon would have done something to help.

101.    On December 12, 2020, an Amazon delivery driver, name unknown, sent Ms.

Navarrete sexually explicit text messages.

102.    When the driver dropped deliveries off at the P street location, he exposed himself to Ms. Navarrete. He came behind Ms. Navarrete while she worked and pushed his penis on her or thrusted on her. Other employees witnessed and laughed—no one helped.

103.    At the Silver Spring location, in December 2020, employees referred to Ms. Navarrete as "Victor" because the previous managers told them that Ms. Navarrete is a transgender woman.

104.    Also in December 2020, Simon, last name unknown, a bakery manager, sent Ms. Navarrete sexually explicit pictures. Simon received her phone number from a manager.

105.    Ms. Smith was the only manager with Ms. Navarrete's phone number.

106.    During shifts that Ms. Navarrete worked with Simon, he inappropriately touched her, said sexually explicit comments, and rubbed his penis on her body.

107.    Ms. Navarrete reported Simon to Ms. Hyde and Ali Askari, Silver Spring Supervisor.

108.    Mr. Askari flirted with Ms. Navarrete when he first met her. He started to yell at Ms. Navarrete when he learned Ms. Navarrete is transgender. Mr. Askari became mad at Ms. Navarrete and told her that he was not gay.

109.    Ms. Navarrete complained about Mr. Askari to management.

110.    Mr. Askari continued to harass Ms. Navarrete by calling her "Victor" and making her wear her badge ID with "Victor" on it, despite not making other employees wear their badges.

111.    On December 14, 2020, Ms. Navarrete filed yet another complaint.

112.    On December 20, 2020, Ms. Navarrete worked at the H Street Whole Foods. Immediately upon entering the store, Jeremy DeLorenzo, 3P Regional Area Manager

Prime Now, grabbed Ms. Navarrete and asked her to perform oral sex. He took her to the store's locker room, called her Victor, and described his "sexual plans." Ms. Navarrete told him she did not want to engage in sexual activity with him.

113.    On December 21, 2020, Amazon managers told Ms. Navarrete that if she came to work with makeup on, Amazon would terminate her employment.

114.    Further, the managers did not let her use the women's restroom. The managers sent a security guard to ensure that Ms. Navarrete did not use the women's restroom.

115.    Ms. Navarrete told Ms. Hyde and Mr. Burleson that she would call the police if Amazon forced her to return to the H street location.

116.    On December 21, 2020, Ms. Navarrete emailed Ms. Hyde, Mr. Burleson, and Megan Yan, reporting Ms. Smith's disgusting behavior:

> Supervisor Renika Smith is saying that the coronavirus and HIV are the same thing, that they kill people and transgender women, they have AIDS, they have HIV, she is making fun of like crazy and is making other colleagues watch with fear and disgust. They have to stop this woman, she also called me, Mada Fucker…she is abusing me please help me. dont abandon me, you promised to help me and now you are missing.
>
> Mirta, a whole food [sp] employee, is saying that if I am not in comfortable at work, I quit, that is not fair and intolerable. …
>
> [Mirta] says that Whole food [sp] and Amazon will not do anything for me. If that had been her, it would be something else, what is she saying? Because I'm a transgender, I'm not worth anything? That I don't  and she says that I am in danger that I don't deserve respect? …
>
> [T]his is already hell, On the other hand, I no longer go to the friendship Highs [sp] store, because there they are setting traps to harm me, the employees told me not to because they plan to do something to make me fall and fire me. They told me to report to the authorities and that the 3 men who were following me last Monday, November 30, offering me their penis and sex in front of the Amazon bosses and that they did nothing…

Ms. Navarrete ended her email pleading for help.

117.    On December 23, 2020, Ms. Hayden contacted Ms. Navarrete about the Ms. Smith investigation. Viviana, last name unknown, ERC Amazon employee, told Ms. Navarrete that Amazon finished the investigation, but Ms. Hayden stated that the investigation had only just started.

118.    The next day, Ms. Hayden called Ms. Navarrete to discuss the investigation but did not tell her anything significant about the investigation.

119.    Amazon employees started to harass Ms. Navarrete outside of work. An Amazon employee followed her to a T-Mobile store and tried to intimidate her in the store.

120.    Ms. Navarrete sent another email to Sharon Viviana Cabalceta, Ms. Hayden, Ms. Yan, and Mr. Burleson on December 24, 2020, pleading for help: "I beg you to please be more aware and more human, I am a person, I am not an animal to be treated with so much hatred, intolerance and discrimination by gender and labor."

121.    On December 28, 2020, Ms. Navarrete reported to the H Street Location. Mr. DeLorenzo physically grabbed Ms. Navarrete and dragged her out of the store. He yelled that he "does not want to work with gays and freaks," that he "does not like people like her," and "does not want her at the store." As he kicked her out of the store, Mr. DeLorenzo called Ms. Navarrete "faggot" and addressed her as "Victor." He claimed to have terminated her employment that day.

122.    Employees on December 28, 2020, and after, called Ms. Navarrete a "wet bag," which is a derogatory term for immigrants, "an old man," and told her to "go back to Mexico," and "make them a burrito."

123.    Mr. DeLorenzo is also a manager of the Springfield location. Before Ms. Navarrete reported there for her first day, Mr. DeLorenzo told the other employees that she was transgender, "a faggot," and a "man who wears makeup."

124.    Esther, last name unknown, Friendship Heights Whole Foods Manager, threatened to give Ms. Navarrete "points" for showing up late to work.

125.    Ms. Navarrete called Ms. Hyde, submitted an ERC, and emailed Mr. Burleson, Ms. Hayden, and Ms. Hyde. Ms. Hyde responded that Amazon would reinstate Ms. Navarrete.

126.    Ms. Navarrete further emailed Mr. Atkin about the December 28, 2020, incident. Mr. Atkin seemed sympathetic and agreed to help her, but did not actually take any action to do so.

127.    Instead, on January 3, 2021, Mr. Atkins told Ms. Navarrete that she would get points if she was late, missed shifts, or left early.

128.    Ms. Navarrete replied that she was sexually harassed and emphasized that no one would help her.

129.    On January 4, 2021, Ms. Navarrete reported to Mr. Atkins her incident with Esther, Mr. DeLorenzo, Malik, Ms. Smith, and several other incidents of discrimination and harassment. She pled for help from Mr. Atkins, but to no avail.

130.    On January 15, 2021, Ibrahim, last name unknown, an African American male produce employee, told Ms. Navarrete, "motherfucker, I don't want you in my space," and threatened to hit her.

131.    Derek, last name unknown, Store Manager, witnessed the harassing behavior and told Ibrahim to stop.

132.    Derek submitted his own incident report to Ms. Hyde, Ms. Hayden, Mr. Burleson, Ms. Gomes, Mr. Bachar, Mr. Atkins, Mr. Hance, Lucio Ramirez, Cambria Lucas—all in Amazon Human Resources.

133.    Not one of the notified managers helped Ms. Navarrete.

134.    Shortly thereafter, Amazon terminated Derek's employment.

135.    On January 15, 2021, Paolo, last name unknown, a dairy section employee, purposefully knocked over several jugs of juice onto Ms. Navarrete.

136.    Ms. Navarrete reported the incident to Keryn Rowland, Senior Human Resources Investigator Amazon. Ms. Rowland stated that the cameras did not show Paolo knocking over the jugs.

137.    Human Resources did not discipline Paolo.

138.    Further, Paolo led chants that Ms. Navarrete "smells like shit" and other phrases in Spanish so that the other employees would not understand his inappropriate comments.

139.    On January 18, 2021, Ms. Navarrete exited the men's restroom—due to previous enforcement not to use the women's restroom. Mr. DeLorenzo, Kisha, last name unknown, and other employees surrounded Ms. Navarrete.

140.    Mr. DeLorenzo realized that Ms. Navarrete could not speak or read English very well, so he gave her an "English pop quiz."

141.    When she "failed" the test, Mr. DeLorenzo then terminated Ms. Navarrete, again.

142.    On January 21, 2021, Ms. Navarrete reported Mr. DeLorenzo's behavior to Ms. Hayden, describing the pop quiz, termination, harassing comments, and supervisors preventing her from using the women's restroom.

143.    On January 28, 2021, Arielle Green, Senior Human Resources Assistant, notified
Ms. Navarrete that Amazon would place her on two weeks of mandatory paid leave
while the company investigated her claims.

144.    On February 22, 2021, Ms. Navarrete asked Ms. Gomes, Ms. Green and Ms. Hyde
if she should return to work now that the two weeks of paid leave ended. Amazon failed
to provide any clarification.

145.    The Equal Employment Opportunity Commission presented charges to Amazon
and Whole Foods on March 11, 2021.

146.    On March 12, 2021, at the Arlington location, Mr. DeLorenzo and Keisha waited
outside for Ms. Navarrete in an intimidating manner. Ms. Navarrete got scared and started
crying.

147.    Ms. Williams called Ms. Navarrete to ask where she was. Ms. Navarrete explained
that she was in the parking lot and detailed how Mr. DeLorenzo and Keisha's behavior
was escalating.

148.    Ms. Williams included Ms. Rowland and Ms. Lucas in her call with Ms. Navarrete.
They collectively told her to go home that day and assured her that she would get paid
leave. They emphasized that she should not call the police, and, instead, directed her to
call Ms. Williams if anything else happened at work.

149.    Amazon did not pay Ms. Navarrete for her work on March 12, 2021.

150.    Later, on March 12, 2021, Ms. Williams, Ms. Rowland, and Ms. Lucas called Ms.
Navarrete and offered her $12,500 to resign from Amazon and withhold from pressing
charges.

151.    Ms. Navarrete stated that she did not want to resign. She further asked for her missing wages. Ms. Williams and the other Human Resources representatives told her to think about the offer to resign.

152.    On March 13, 2021, Mr. DeLorenzo and Keisha's behavior escalated with persistent, ceaseless harassment. Other employees in the meat section started to participate in the harassment as well.

153.    Between March 13 and March 18, 2021, Amazon placed Ms. Navarrete on suspension. Upon information and belief, Amazon had suspended her while they investigated her complaints of discrimination and harassment.

154.    On March 18, 2021, Ms. Navarrete asked Ms. Williams to fix her Amazon employee account so that she could get on the schedule. At this time, Amazon still had Ms. Navarrete on suspension.

155.    On March 22, 2021, Ms. Williams notified Ms. Navarrete that Amazon sent out expedited payments and requested to meet to conclude the investigation.

156.    On March 23, 2021, Amazon removed Ms. Navarrete from suspension. Amazon listed the store locations available for her to work, however, the only store where the conditions were remotely tolerable was the Arlington location. Even there, Ms. Navarrete was terrified to see Mr. DeLorenzo and Keisha.

157.    Ms. Williams told Ms. Navarrete to report to P Street or Friend Heights locations, however, Ms. Navarrete did not want to return to the location of abuse.

158.    On March 21, 2021, male employees described to Ms. Navarrete what they wanted to do sexually to her.

159.    Ms. Navarrete reported these advances to Ms. Hyde, Mr. Burleson, Mr. Atkins, Mr. Askari, and Mr. Hammond.

160.    Later, on March 21, 2021, a male pizza department employee, followed Ms. Navarrete through the P Street parking lot. He grabbed her wrists, tried to hold her down, and exposed himself to her.

161.    Ms. Navarrete screamed. Eventually, other employes and customers removed him off her.

162.    Ms. Navarrete reported this incident to Ms. Hyde, yet no investigation followed.

163.    On March 25, 2021, Keisha told Ms. Navarrete to "take care of your back bitch."

164.    Later that same day, an African American male employee asked for Ms. Navarrete's number. He followed Ms. Navarrete throughout the Arlington store. Ms. Navarrete walked out to the parking lot to avoid the employee.

165.    The male employee walked out into the parking lot as well. As Ms. Navarrete drove away, the employee got into his car and followed her.

166.    Ms. Navarrete sent an email to Ms. Williams about the parking lot incident on March 25, 2021.

167.    On March 26, 2021, Ms. Navarrete sent a follow-up email to Ms. Williams and included Mr. Bachar, and Ms. Gomes stating "I was afraid and really wanted to call the police, but you Tinea, last Monday the 22nd in March said, in the call we had, you asked me if something happened at work to let you know, before calling the police, I promised you that I would do so and I did."

168.    Ms. Navarrete also told Ms. Williams, Mr. Bachar, and Ms. Gomes that she did not want to go back to the Arlington location. She referenced the "offer made by Mrs. Lucas,

the offer of money in exchange of me signing resignation and don't press charges," emphasizing again that she would not accept the offer.

169.     Ms. Williams never called Ms. Navarrete.

170.     Ms. Navarrete filed an ERC for the March 25, 2021 incident.

171.     On March 27, 2021, Ms. Navarrete emailed Ms. Williams requesting help and for payment during her suspension.

172.     At the Riverdale store, Ricardo, last name unknown, a Whole Foods manager, asked Ms. Navarrete to have sex with him in return for a promotion. Ms. Navarrete adamantly responded no.

173.     Ricardo told Ms. Navarrete that she "needs to play the game."

174.     Initially, Ashley, last name unknown, a seafood department associate, was friendly to Ms. Navarrete at the Riverdale location. When Ashley learned that Ms. Navarrete is transgender, she called her "a man with a penis," "a man with makeup," "faggot," and "bitch," as well as other derogatory comments, including "trans people don't have a place," and "trans people are whores."

175.     Ashley would not provide Ms. Navarrete with seafood items when she requested them for orders.

176.     Ms. Navarrete discussed Ashley with a co-worker, Matthew, last name unknown, a stock employee. He defended Ashley's behavior.

177.     Ms. Williams told Ms. Navarrete to file a complaint about Matthew, as well as for other Riverdale employees failing to help her complete orders.

178.     Ms. Rowland asked to meet with Ms. Navarrete to discuss her complaint.

179.    On April 19, 2021, Amazon Labor System notified Ms. Navarrete that she does not have an account, despite Ms. Navarrete complaining to Ms. Williams three days prior about issues with her account.

180.    On April 22, 2021, Ms. Navarrete filed an ERC, again.

181.    Later, on April 22, 2021, Ms. Rowland notified Ms. Navarrete that the investigation regarding the March 28, 2021 incident found no violation of policy or standard of conduct.

182.    Around April 2021 to May 2021, Carlos, last name unknown, a Springfield employee, forcibly kissed Ms. Navarrete. He then bragged about this to other employees.

183.    When Carlos learned Ms. Navarrete is transgender, he threatened to kill her.

184.    Matthew and Christian, last name unknown, Riverdale employees, asked Ms. Navarrete to have sex with them. Ms. Navarrete responded no.

185.    Matthew and Christian threatened that they "would not be turned down by a gay dude," and Matthew wanted to "put his black monster dick" in her.

186.    Matthew continued this harassment until September 2021. He told Ms. Navarrete to "clean you ass," "suck my big black dick, and "let me fuck you" on several occasions.

187.    Matthew yelled, "the real problem with you is because you don't have a real pussy, you faggot, you always refuse my dick."

188.    When Ms. Navarrete would respond no, he would call her "faggot," "fucking dude," and that she is the problem, and she cannot reject him.

189.    Matthew said these remarks in front of other employees and customers, yet no one protected Ms. Navarrete.

190.     Ms. Navarrete eventually called the police on Matthew. She asked Kevin Wallace, Whole Foods security guard and Riverdale Park Police Department Officer, to intervene and to tell Matthew to leave her alone. She told Officer Wallace that in every store, she has been touched by employees, asked to engage in sex acts, and sent explicit pictures. She elaborated that she he did not want any employees, but wanted them to stop the discrimination for being transgender.

191.     Ms. Navarrete explicitly asked Officer Wallace not to press charges against Matthew. He did not do so.

192.     Katie, an EEOC employee, told Ms. Navarrete that Amazon Human Resources stated that the Matthew incident never happened, she was crazy, and the cameras did not record anything.

193.     In between February 2021 and May 2021, a Pentagon location Whole Foods security officer stopped Ms. Navarrete in her car as she drove near the Whole Foods store. He made her turn off the main street to a dark side street.

194.     She asked him if she did anything wrong. He asked Ms. Navarrete is she was transgender, and when he saw her ID that said "Victor," he said "I know you are trans."

195.     He ordered her to get out of the car, and Ms. Navarrete started to cry. He assured her that she was not in trouble and told her to come sit in his car. She got in his car and he exposed himself.

196.     The officer then forced Ms. Navarrete to perform oral sex on him.

197.     He told Ms. Navarrete to "eat this American dick," and that "all trans people love big American penis."

198.    Ms. Navarrete could not stop crying. The Officer finally told her that she could go if she was crying, so Ms. Navarrete immediately left.

199.    Ms. Navarrete saw the officer at the Pentagon location after this incident.

200.    On May 1, 2021, Amazon notified Ms. Navarrete that she was not meeting replacement metrics, meaning when items were unavailable, she did not select the proper replacements.

201.    Ms. Navarrete responded to Amazon that other employees would not speak to her or get her the food she needed to complete the orders.

202.    On May 4, 2021, Ms. Navarrete complained to Ms. Rowland and other managers about Matthew. Whole Foods managers told her they cannot do anything because Ms. Navarrete is only an employee of Amazon, not Whole Foods.

203.    Ms. Rowland told Ms. Navarrete that Officer Wallace relayed to Amazon his version of the May 1, 2021 incident with Matthew, which did not support Ms. Navarrete's version of events.

204.    Officer Wallace previously gave Ms. Navarrete his phone number, so she texted him asking that he revise his statement.

205.    Despite Ms. Navarrete's attempts to clarify the statement, Ms. Rowland closed the May 1, 2021 investigation. Ms. Rowland cited that there were no witnesses or cameras. Ms. Rowland disregarded Officer Wallace's corrected statement.

206.    In May 2021, Mr. DeLorenzo terminated Ms. Navarrete. Again, as the termination did not last long, she had to immediately restart the hiring process.

207.    Yet again, Mr. DeLorenzo gave Ms. Navarrete a new ID badge with the name "Victor."

208.    Ms. Navarrete filed an ERC describing Mr. DeLorenzo's refusal to us Ms. Navarrete's correct name.

209.    Ms. Navarrete filed another ERC to Shawn, last name unknown, manager, explaining that employees, Rashidy, last name unknown, and Wilber, last name unknown, made fun of her for being transgender and refused to help her.

210.    On June 7, 2021, Paolo and Ibrahim, last name unknown, two male employees, threw boxes at Ms. Navarrete to try to hit her. Both employees called her "motherfucker."

211.    Ms. Navarrete filed several ERCs around June 7, 2021, to complain about Paolo, Ibrahim, and other workers' harassment.

212.    On June 12, 2021, Agnissan, last name unknown, a male Silver Springs location employee, showed Ms. Navarrete his penis. He proceeded to touch Ms. Navarrete's breasts and buttocks.

213.    Ms. Navarrete reported this unwanted touching and inappropriate sexual behavior to Rhonda. Rhonda sent Ms. Navarrete home and filed a report.

214.    Amazon did not discipline Agnissan or conduct any investigation.

215.    Since Amazon would not protect Ms. Navarrete, she bought a fanny pack to wear behind her so that Agnissan could not touch her body from behind.

216.    The fanny pack did not prevent Agnissan from touching Ms. Navarrete inappropriately.

217.    Specifically, on June 13, 2021, Agnissan showed up to work with an erect penis. He directed Ms. Navarrete to remove her fanny pack because he "wanted to see her." He described what he would do to her sexually.

218.    Agnissan threatened that he knew she lived alone.

219.    He asked her if she owned sex toys and asked her if she was "horny." He further asked her if she "likes his penis" and "how many fingers can he put in her ass."

220.    Agnissan then showed Ms. Navarrete his penis.

221.    Ms. Navarrete reported the June 13, 2021 incident to Rhonda. Rhonda responded that Ms. Navarrete should leave the store for her own safety.

222.    As Ms. Navarrete walked to her car, Agnissan followed her. Agnissan masturbated behind Ms. Navarrete as she walked.

223.    From June 2021 to July 2021, Ms. Navarrete took three weeks of unpaid leave while Amazon allegedly investigated Agnissan's abhorrent behavior.

224.    Upon information and belief, Ms. Williams and Ms. Rowland told Human Resources that Ms. Navarrete lied about everything.

225.    On July 6, 2021, Ms. Rowland closed the June 12, 2021 investigation. Ms. Rowland notified Ms. Navarrate that the "[i]nvestigation did not find any violation of Amazon policy or standards of conduct. Your HR Business Partner, Bryon Pavelka, will be partnering with you to discuss the path forward."

226.    When Ms. Navarrete returned to work after Agnissan incident, Rhonda asked to talk to her. Ms. Navarrete asked why she lied to other Human Resources representatives. Rhonda stated that she did not lie, that she told them exactly what happened, and showed Ms. Navarrete her phone with the messages.

227.    Rhonda did tell Human Resources what happened – Human Resources ignored her reporting.

228.    In July 2021, Officer Wallace told Ms. Navarrete that she "owes him" after helping with the Matthew incident. He then stated that he wanted to be "friends with benefits."

He said that he had sex with other transgender people, including his transgender cousin. She told him that she does not want to do anything sexual with people she is not in a romantic relationship with.

229.    Officer Wallace asked for explicit videos from Ms. Navarrete, including videos of her having sex with her boyfriend. He called her almost daily and asked for pictures of her body.

230.    Officer Wallace also sent Ms. Navarrete nude pictures and pornographic videos.

231.    On July 13, 2021, Ms. Navarrete did not report to work because she was recovering surgery. Officer Wallace texted Ms. Navarrete to ask where she was. Officer Wallace then showed up at Ms. Navarrete's house to tell her that he had Amazon paperwork for her.

232.    As Officer Wallace walked into Ms. Navarrete's home, he pushed her onto the bed, held a gun to her head, and raped her.

233.    The next morning, Ms. Navarrete went to the police station to file a report. The officer told her that if she complained, he would arrest her for prostitution because "all trans people are into drugs and are whores."

234.    Ms. Navarrete reported the rape to Ms. Williams. She responded that there was nothing Amazon could do because the rape did not occur at work.

235.    Ms. Navarrete then tried to report this to Katie from the EEOC. Katie told Ms. Navarrete that she "was lying," and she was a "crazy trans person" and that "this didn't happen."

236.    Despite these reports, Amazon continued to send Ms. Navarrete to Riverdale— where Officer Wallace worked.

237.    Mr. Hance pressured Ms. Navarrete to resign numerous times between August 2021 and October 2021.

238.    On October 6, 2021, Ms. Rowland and Ms. Williams offered Ms. Navarrete $200,000 to resign. Ms. Navarrete recorded this call, and Amazon terminated her for the recording.

239.    Brian Pavelka, Senior Human Resources Investigator Amazon, investigated the Agnissan event and emailed Ms. Navarrete a termination letter on October 6, 2021.

## COUNT I
## Race and National Origin Discrimination – Hostile Work Environment
## 1866 Civil Rights Act, 42 U.S.C. § 1981

240.    Ms. Navarrete repeats and realleges paragraphs 1-239, as if fully set forth herein.

241.    Defendant discriminated against Ms. Navarrete on the basis of race (Mexican) and national origin (Mexico) when Defendant subjected Ms. Navarrete to a hostile work environment.

242.    By and through its conduct, Defendant subjected Ms. Navarrete to a hostile work environment based on her race and national origin when employees called her derogatory names related to race and national origin, including but not limited to "wet bag," "faggot," "motherfucker," "macho man," told her to "go back to Mexico," and "make them a burrito"; and when Jeremy DeLorenzo, supervisor, gave her a pop English quiz and then terminated her employment because she "failed" his quiz.

243.    Defendant's actions were intentional, reckless, and malicious.

244.    As a result of Defendant's unlawful actions, Plaintiff suffered damages including but not limited to pain and suffering, emotional distress, mental anguish, lost wages and benefits, liquidated damages, attorneys' fees and costs.

## COUNT II
### Race and Color Discrimination – Termination
### 1866 Civil Rights Act, 42 U.S.C. § 1981

245.    Plaintiff repeats and realleges paragraphs 1-239, as if fully set forth herein.

246.    Defendant discriminated against Ms. Navarrete on the basis of race (Mexican) and national origin (Mexico) when Defendant terminated Ms. Navarrete's employment.

247.    By and through its conduct, Defendant discriminated against Ms. Navarrete in violation of the 1866 Civil Rights Act.

248.    Defendant's actions were intentional, reckless, and malicious.

249.    As a result of Defendant's unlawful actions, Plaintiff suffered damages including but not limited to pain and suffering, emotional distress, mental anguish, lost wages and benefits, liquidated damages, attorneys' fees and costs.

## COUNT III
### Race, National Origin, Sex Discrimination – Hostile Work Environment
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), *et seq.*

250.    Ms. Navarrete repeats and realleges paragraphs 1-239, as if fully set forth herein.

251.    Defendant discriminated against Ms. Navarrete on the basis of race (Mexican), national origin (Mexico), sex (Transgender Female) when Defendant subjected Ms. Navarrete to a hostile work environment.

252.    By and through its conduct, Defendant subjected Ms. Navarrete to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, including when employees called her derogatory names related to her sexual orientation, gender identity, and national origin, including "wet back," "motherfucker," and "faggot"; employees touched and groped her body and/or touched themselves in a sexual manner while looking at her; employees solicited her for sexual acts; Adrian Bell made derogatory and harassing comments to Plaintiff, including "people like you [transgender] are sick"; "someone has to kill you bitch"; "suck this black dick"; and, on one occasion, followed her into the parking garage screaming at her and threatening to kill her; Antonio sexually harassed Plaintiff and when she complained, her supervisors locked her in a closet to prevent her from calling the police; Kevin Wallace, Police Officer at Riverdale Whole Foods, sexually assaulted Plaintiff in her own home; and Jeremy DeLorenzo, supervisor, gave her a pop English quiz and made her read in English in front of colleagues.

253.    Defendant's actions were intentional, reckless, and malicious.

254.    As a result of Defendant's unlawful actions, Plaintiff suffered damages including but not limited to pain and suffering, emotional distress, mental anguish, lost wages and benefits, liquidated damages, attorneys' fees and costs.

## COUNT IV

**Race, National Origin, Sex Discrimination – Termination**

**Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), *et seq.***

255.    Plaintiff repeats and realleges paragraphs 1-239, as if fully set forth herein.

256.    Defendant discriminated against Ms. Navarrete on the basis of race (Mexican), national origin (Mexico) and sex (Transgender Female) when Defendant terminated Ms. Navarrete's employment.

257.    By and through its conduct, Defendant discriminated against Ms. Navarrete in violation of the Title VII of the Civil Rights Act of 1964

258.    Defendant's actions were intentional, reckless, and malicious.

259.    As a result of Defendant's unlawful actions, Plaintiff suffered damages including but not limited to pain and suffering, emotional distress, mental anguish, lost wages and benefits, liquidated damages, attorneys' fees and costs.

## COUNT V
**Retaliation for Protected Activity – Hostile Work Environment**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 200(e), *et seq.***

260.    Ms. Navarrete repeats and realleges paragraphs 1-239, as if fully set forth herein.

261.    Defendant retaliated against Ms. Navarrete after she complained about discrimination and harassment when Defendant subjected her to a hostile work environment.

262.    By and through its conduct, Defendant subjected Ms. Navarrete to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, including when employees called her derogatory names related to her sexual orientation, gender identity, and national origin, including "wet back," "motherfucker," and "faggot"; employees touched and groped her body and/or touched themselves in a sexual manner while looking at her; employees solicited her for sexual acts; Adrian Bell made derogatory and harassing comments to Plaintiff, including "people like you [transgender] are sick"; "someone has

to kill you bitch"; "suck this black dick"; and, on one occasion, followed her into the parking garage screaming at her and threatening to kill her; Antonio sexually harassed Plaintiff and when she complained, her supervisors locked her in a closet to prevent her from calling the police; Kevin Wallace, Police Officer at Riverdale Whole Foods, sexually assaulted Plaintiff in her own home; and Jeremy DeLorenzo, supervisor, gave her a pop English quiz and made her read in English in front of colleagues.

263.    Defendant's actions were intentional, reckless, and malicious.

264.    As a result of Defendant's unlawful actions, Plaintiff suffered damages including but not limited to pain and suffering, emotional distress, mental anguish, lost wages and benefits, liquidated damages, attorneys' fees and costs.

**COUNT VI**

**Retaliation for Protected Activity – Termination**

**Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 200(e),** *et seq.*

265.    Plaintiff repeats and realleges paragraphs 1-239, as if fully set forth herein.

266.    Defendant retaliated against Ms. Navarrete after she complained about discrimination and harassment when Defendant terminated Ms. Navarrete's employment.

267.    By and through its conduct, Defendant retaliated against Ms. Navarrete in violation of Title VII of the Civil Rights Act of 1964.

268.    Defendant's actions were intentional, reckless, and malicious.

269.    As a result of Defendant's unlawful actions, Plaintiff suffered damages including but not limited to pain and suffering, emotional distress, mental anguish, lost wages and benefits, liquidated damages, attorneys' fees and costs.

## COUNT VII

**Race, National Origin, Sex, Gender Identity and Expression, Personal Appearance, and Sexual Orientation Discrimination – Hostile Work Environment**

**D.C. Human Rights Act – D.C. Code § 2–1402.11 *et seq.***

270.    Ms. Navarrete repeats and realleges paragraphs 1-239, as if fully set forth herein.

271.    Defendant discriminated against Ms. Navarrete on the basis of race (Mexican), national origin (Mexico), sex (Transgender Female), gender identity and expression (identifies as female), personal appearance, and sexual orientation when Defendant subjected Ms. Navarrete to a hostile work environment.

272.    By and through its conduct, Defendant subjected Ms. Navarrete to a hostile work environment in violation of the D.C. Human Rights Act, including when employees called her derogatory names related to her sexual orientation, gender identity, and national origin, including "wet back," "motherfucker," and "faggot"; employees touched and groped her body and/or touched themselves in a sexual manner while looking at her; employees solicited her for sexual acts; and when Kevin Wallace, Police Officer at Riverdale Whole Foods, sexually assaulted Plaintiff in her own home.

273.    Defendant's actions were intentional, reckless, and malicious.

274.    As a result of Defendant's unlawful actions, Plaintiff suffered damages including but not limited to pain and suffering, emotional distress, mental anguish, punitive damages, lost wages and benefits, liquidated damages, attorneys' fees and costs.

## COUNT VIII

**Race, National Origin, Sex, Gender Identity and Expression, Personal Appearance, and Sexual Orientation Discrimination – Termination**

**D.C. Human Rights Act – D.C. Code § 2–1402.11 *et seq.***

275.    Plaintiff repeats and realleges paragraphs 1-239, as if fully set forth herein.

33

276.    Defendant discriminated against Ms. Navarrete on the basis of race (Mexican),

national origin (Mexico), sex (Transgender Female), gender identity and expression

(identifies as female), personal appearance, and sexual orientation when Defendant

terminated Ms. Navarrete's employment.

277.    By and through its conduct, Defendant discriminated against Ms. Navarrete in

violation of the D.C. Human Rights Act.

278.    Defendant's actions were intentional, reckless, and malicious.

279.    As a result of Defendant's unlawful actions, Plaintiff suffered damages including

but not limited to pain and suffering, emotional distress, mental anguish, punitive

damages, lost wages and benefits, liquidated damages, attorneys' fees and costs.


**COUNT IX**

**Retaliation – Hostile Work Environment**

**D.C. Human Rights Act – D.C. Code § 2-1402.61**

280.    Ms. Navarrete repeats and realleges paragraphs 1-239, as if fully set forth herein.

281.    Defendant retaliated against Ms. Navarrete after she complained about

discrimination and harassment when Defendant subjected her to a hostile work

environment.

282.    By and through its conduct, Defendant subjected Ms. Navarrete to a hostile work

environment in violation of the D.C. Human Rights Act, including when employees

called her derogatory names related to her sexual orientation, gender identity, and national

origin, including "wet back," "motherfucker," and "faggot"; employees touched and

groped her body and/or touched themselves in a sexual manner while looking at her;

employees solicited her for sexual acts; and Kevin Wallace, Police Officer at Riverdale

Whole Foods, sexually assaulted Plaintiff in her own home.

283.    Defendant's actions were intentional, reckless, and malicious.

284.    As a result of Defendant's unlawful actions, Plaintiff suffered damages including

but not limited to pain and suffering, emotional distress, mental anguish, lost wages and

benefits, liquidated damages, attorneys' fees and costs.


## COUNT X
### Retaliation – Termination
### D.C. Human Rights Act – D.C. Code § 2-1402.61

285.    Plaintiff repeats and realleges paragraphs 1-239, as if fully set forth herein.

286.    Defendant retaliated against Ms. Navarrete after she complained about

discrimination and harassment when Defendant terminated Ms. Navarrete's employment.

287.    By and through its conduct, Defendant retaliated against Ms. Navarrete in violation

of the D.C. Human Rights Act.

288.    Defendant's actions were intentional, reckless, and malicious.

289.    As a result of Defendant's unlawful actions, Plaintiff suffered damages including

but not limited to pain and suffering, emotional distress, mental anguish, lost wages and

benefits, liquidated damages, attorneys' fees and costs.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against the

Defendant on all Counts and award Plaintiff lost wages and benefits, compensatory

damages for physical, emotional and mental distress, punitive damages, pre- and post-

judgment interest, costs, attorneys' fees, and any such other relief as is just and proper.

Date:   February 14, 2025

RESPECTFULLY SUBMITTED,


Alan Lescht and Associates, P.C.

By: *Ari M. Wilkenfeld*
Ari M. Wilkenfeld [Bar No. 14006]
Alan Lescht & Associates, P.C.
1825 K Street NW Suite 750
Washington, DC 20006
T : (202) 463-6036
F : (202) 463-6067
Ari.wilkenfeld@leschtlaw.com
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2025, all parties on record were served electronically via the Court's CM/ECF system.


*/s/ Ari Wilkenfeld*
Ari Wilkenfeld